UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL BENTER,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>    Defendant. | Case No. 24-cv-00375-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Docket No. 13 |

Plaintiff Samuel Benter initiated proceedings against Defendant United Parcel Service, Inc. ("UPS") before a state administrative agency – specifically, the California Department of Industrial Relations, Labor Commissioner's Office ("DIR"). Mr. Benter claimed that UPS failed to reimburse him for business expenses, in particular, cell phone costs of $50 per month, for a total (at that time) of $1,800. *See* Docket No. 2 (Brown Decl., Ex. A) (complaint). After the Labor Commissioner ruled against him, *see* Docket No. 2 (Brown Decl., Ex. B) (order), Mr. Benter filed an appeal with the Contra Costa Superior Court. *See* Docket No. 2 (Brown Decl., Ex. C) (notice of appeal). UPS then removed the case from state to federal court. Now pending before the Court is Mr. Benter's motion to remand. Having considered the parties' briefs as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to remand but denies Mr. Benter's request for attorney's fees.

## I.    DISCUSSION

Mr. Benter moves to remand the case back to state court on two grounds: (1) the removal was not timely and (2) diversity jurisdiction is lacking because the amount in controversy does not

1  exceed $75,000.[1]

2  A.   Timeliness of Removal

3  Under 28 U.S.C. § 1446, a notice of removal must "be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446.

Mr. Benter argues that UPS's removal was not timely because he served his notice of appeal (initiating the state court action) on December 18, 2023, and UPS did not remove until January 22, 2024 – *i.e.*, 35 days later. The problem with Mr. Benter's argument is that he starts the clock running from the date he served UPS. However, under § 1446, the clock starts running upon *receipt* of the pleading by the defendant.

Here, UPS does not expressly state when it received the notice of appeal. However, it does point out that Mr. Benter served the notice of appeal by mail. Under Federal Rule of Civil Procedure 6(d), "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to), *3 days* are added after the period would otherwise expire under Rule 6(a) [which governs computing time]." Fed. R. Civ. P. 6(d) (emphasis added). Thirty-three days after December 18, 2023, is January 20, 2024 – a Saturday. The first Court day thereafter is January 22, 2024 (a Monday), which is the day that UPS removed. UPS's removal was therefore timely.

B.   Amount in Controversy

Because UPS's removal was timely, the next issue is whether there was, as claimed by UPS, diversity jurisdiction at the time of removal. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds

---

[1] Contrary to what UPS suggests, Mr. Benter does not dispute that UPS could remove his administrative appeal from state to federal court. *See BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 791 (9th Cir. 2009) (stating that "even though this case involves on-the-record review of a Montana administrative agency decision, the district court has diversity jurisdiction"); *see also Garcia v. Orion Plastics Corp.*, No. CV 15-07514-AB (KSx), 2016 U.S. Dist. LEXIS 65659, at *4 (C.D. Cal. May 18, 2016) (stating that, in *BNSF*, the Ninth Circuit held that "the district court could assert diversity jurisdiction over the plaintiff's action notwithstanding the state law indicating that the underlying appeal could only be initiated in state court").

1   the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of

2   different States . . . ."). Mr. Benter does not dispute that the parties are completely diverse.

3   However, he contends that the amount in controversy in the instant case does not exceed $75,000.

4         Amount in controversy means the amount at stake in the litigation. *Chavez v. JPMorgan*

5   *Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). Amount in controversy is assessed at the time of

6   removal but that "does *not* mean that the mere futurity of certain classes of damages precludes

7   them from being part of the amount in controversy. . . . [¶] [T]he amount in controversy includes

8   all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails."

9   *Id.* at 417-18 (emphasis in original).

10         "Where, as here, it is unclear from the face of the complaint whether the amount in

11   controversy exceeds $75,000, 'the removing defendant bears the burden of establishing, by a

12   preponderance of the evidence, that the amount in controversy exceeds the jurisdictional

13   threshold.'" *Id.* at 416. "In assessing the amount in controversy, [a court] may consider

14   allegations in the complaint and in the notice of removal, as well as summary-judgment-type

15   evidence relevant to the amount in controversy." *Id.* A court may also rely on a "'chain of

16   reasoning that includes assumptions.' Such 'assumptions cannot be pulled from thin air but need

17   some reasonable ground underlying them.'" *Arias v. Residence Inn*, 936 F.3d 920, 925 (9th Cir.

18   2019).

19         1.      <u>Whether Attorneys' Fees Count as Part of the Amount in Controversy</u>

20         The Ninth Circuit has held that "[t]he amount in controversy may include 'damages

21   (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as

22   attorneys' fees awarded under fee shifting statutes.'" *Chavez*, 888 F.3d at 416; *see also Arias*, 936

23   F.3d at 927 (stating that "'[w]e have long held (and reiterated [in early 2018]) that attorneys' fees

24   awarded under fee-shifting statutes or contracts are included in the amount in controversy'").

25         In the instant case, it is clear that the compensatory damages sought by Mr. Benter are

26   relatively small. In his complaint, as filed in March 2022, the compensatory damages identified

27   amounted to only $1,800 ($50 per month for cell phone costs). In his papers, Mr. Benter

28   acknowledges that those damages have increased with the passage of time but not significantly:

3

1  "[A]t the time the Complaint was filed [in 2022], the most that Plaintiff could recover was $1,800

2  (36 months x $50) and through the filing of the Notice of Remand, Plaintiff's recovery totals to

3  $3,000 (60 months x $50)." Mot. at 5-6.

4  Thus, the critical question in the instant case is whether the amount in controversy will

5  exceed $75,000 because Mr. Benter will seek attorneys' fees (as indicated in his complaint).

6  Several district courts have held that, because attorneys' fees may be awarded under

7  California Labor Code § 2802, such fees should be included as part of the amount in controversy.

8  *See, e.g.*, *Maciel v. M.A.C. Cosmetics, Inc.*, No. 22-cv-03885-JSC, 2022 U.S. Dist. LEXIS

9  216290, at *14 (N.D. Cal. Nov. 30, 2022) ("Plaintiffs demand attorneys' fees, and if they prevail

10 on their Labor Code Section 2802 expense reimbursement claim, they are entitled to an award of

11 attorneys' fees. See Cal. Lab. Code § 2802(c).  Therefore, attorneys' fees must be included in the

12 assessment of the amount in controversy."); *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132,

13 1138 (N.D. Cal. 2020) ("Plaintiffs' objection to the inclusion of attorneys' fees is not well taken. .

14 . . Plaintiffs brought this action under California Labor Code Section 2802, which states that the

15 'necessary expenditures or losses' an employer is liable for includes 'attorney's fees incurred by

16 the employee enforcing the rights granted by this section.'").

17 In spite of the above authorities, Mr. Benter argues to the contrary.  He contends that (1)

18 under 28 U.S.C. § 1332(a), the amount in controversy must exceed $75,000 "*exclusive* of interest

19 and costs, 28 U.S.C. § 1332(a) (emphasis added), and (2) California Labor Code § 2802 deems

20 attorneys' fees to be costs; therefore the fees cannot be counted as part of the amount in

21 controversy.  *See* Cal. Lab. Code § 2802(a), (c) (providing that "[a]n employer shall indemnify his

22 or her employee for all necessary expenditures or losses incurred by the employee in direct

23 consequence of the discharge of his or her duties," and that "the term 'necessary expenditures or

24 losses' shall include all reasonable costs, including, but not limited to, attorney's fees incurred by

25 the employee enforcing the rights granted by this section").

26 Mr. Benter's argument lacks merit.  It is contrary to *Missouri State Life Insurance Co. v.*

27 *Jones*, 290 U.S. 199 (1933).  There, the Supreme Court considered whether it was "proper to treat

28 attorneys' fees imposed by [an] Arkansas statute and claimed by the plaintiff, as part of the sum

United States District Court
Northern District of California

necessary for [diversity] jurisdiction." *Id.* at 200.  The state statute provided that fees would be awarded in certain circumstances and would be "'taxed up as part of the costs therein and collected as other costs are or may be by law collected.'" *Id.* at 200-01.  The Supreme Court held that "a statute which allowed attorneys' fees to be taxed as part of the costs created a liability enforceable by proper judgment in a federal court; . . . the mere declaration of the state statute could not alter the true nature of the obligation." *Id.* at 202.  Therefore, the attorneys' fees were part of "the matter put in controversy . . . and not mere 'costs' excluded from the reckoning by the jurisdictional and removal statutes." *Id.*; *see also Grant v. Chevron Phillips Chem. Co. L.P.*, 309 F.3d 864, 873-74 (5th Cir. 2002) (stating that, "even though the general rule is that interest and court costs are not includable in calculating the amount in controversy, attorney's fees are includable when the state statute allowing cost shifting expressly defines the allowable expenses of litigation to include attorney's fees"); *Saval v. BL, Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983) (stating that "attorneys' fees may be considered as part of the [diversity] jurisdictional amount requirement even though the statute provides that the amount shall be calculated 'exclusive of interest and costs'"; "state statutes or contractual provisions transformed attorneys fees into substantive rights to which the litigants were entitled"); *Nordin v. Std. Fire Ins. Co.*, No. 3:22-cv-00775-HZ, 2022 U.S. Dist. LEXIS 209390, at *7 (D. Or. Nov. 18, 2022) (relying on *Missouri State* to include attorneys' fees as part of the amount in controversy).

  2.  Amount of Attorneys' Fees

  Because the Court includes attorneys' fees as part of the amount in controversy, the remaining issue is how much in attorneys' fees is at issue in the case at bar.

  UPS has failed to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold of $75,000 even when attorneys' fees are taken into consideration.  To be sure, Mr. Benter has conceded that fees could take the amount in controversy over $25,000.  This is because, on the civil cover sheet for his appeal to the Contra Costa Superior Court, he checked the box indicating that the demand exceeded $25,000.  That, however, does not mean that fees would take the case over the $75,000 threshold needed for diversity jurisdiction.

1   More likely than not, fees in this case would be (relatively speaking) minimal given the
2 simplicity of the case.  Mr. Benter is bringing a single claim – for business reimbursement
3 expenses – and the only expense at issue is cell phone usage.  There is no indication that this is a
4 document- or witness-heavy case.  In fact, there is no expectation that this case will involve
5 anything more than a one-day trial,[2] and the pretrial preparation will also be limited in nature,
6 given both the nature of the case and the amount at stake in terms of compensatory damages.  It is
7 also worth noting that § 2802 only allows for an award of *reasonable* fees.  When Mr. Benter's
8 counsel litigated his case before the DIR, the firm spent only 12 hours on the case, at hourly rates
9 ranging from $450-$550.[3]  *See* Kanbar Decl. ¶ 12; *see also See Carlson v. Gatestone & Co. Int'l,*
10 *Inc.*, No. 17-cv-01818-BLF, 2017 U.S. Dist. LEXIS 93348, *7 (N.D. Cal. June 16, 2017) ("[E]ven
11 assuming that Carlson's counsel would charge $600 per hour, to satisfy the amount in controversy
12 requirement, Defendants fail to substantiate their estimate that Carlson's counsel will indeed
13 expend the requisite number of hours on this case.").
14   UPS's main argument in response is that the Court can look to similar cases to see what
15 attorneys' fees were awarded there.  *See, e.g.*, *Ochoa v. Costco Wholesale Corp.*, No. 2:22-cv-
16 02287-KJM-AC, 2023 U.S. Dist. LEXIS 62321, at *10 (E.D. Cal. Apr. 7, 2023) ("Because the
17 amount of attorneys' fees is 'unascertainable on the face of the complaint,' a reasonable estimate
18 of attorneys' fees can be calculated 'by looking to other attorney's fees awards in similar cases.'").
19 But UPS failed to show that the cases it cites, *see* Opp'n at 6, are similar to the case at bar.
20 Although the cases all involve appeals from Labor Commissioner decisions, there is nothing to
21 show that the cases are, for instance, factually similar to, or as simple as, the case at bar.  *Cf.*

---

[2] *See Nordquist v. McGraw-Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 560-61 (1995) ("Labor Code section 98.2 provides for a de novo trial in superior court on appeal from an order by the Labor Commissioner.  On appeal from the judgment of the superior court, the findings of the Labor Commissioner are entitled to no weight, and review is of the facts presented to the trial court.").

[3] The Court acknowledges that Mr. Benter has asked for fees of $13,000 (representing about 30 hours of work) based on his moving to remand the case.  Nevertheless, it still gives some credit to the Kanbar Declaration, particularly as § 2802 only allows for an award of reasonable fees.  In other words, the limited work that Mr. Benter's counsel did during the administrative proceedings reflects the limited value of the case.

1 *Schneider v. Ford Motor Co.*, 441 F. Supp. 3d 909, 914 (N.D. Cal. 2020) ("Defendants fail to

2 explain how that case accords with this case. All that Defendants claim is that the same counsel

3 appears in each case and that the subject-matter of the cases are the same. They do not, however,

4 compare or contrast the litigation strategies or the litigation timelines of the two cases."). In

5 addition, the cases are distinguishable for other reasons. In *Pulliam v. EZ Staffing*, No.

6 RIC1616401, 2019 WL 12374026 (Cal. Super. Ct. Oct. 22, 2019), the defendant was awarded

7 more than $65,000 in fees, but that amount was based on, *inter alia*, work from two different

8 trials. *See id.* at *2. In *Gallizio v. Phillips 66 Co.*, No. 14AP-00001, 2015 WL 5567799 (Cal.

9 Super. Ct. Sept. 16, 2015), the trial before the superior court lasted four days, which thus

10 explained the award of fees of more than $120,000. *See id.* at *1-2.

11 Accordingly, the Court concludes that UPS has failed to meet its burden, and thus it grants

12 Mr. Benter's motion to remand.

13 C. Plaintiff's Request for Fees

14 Based on his successful motion to remand, Mr. Benter asks to be awarded attorneys' fees

15 pursuant to 28 U.S.C. § 1447(c). *See* 28 U.S.C. § 1447(c) ("An order remanding the case may

16 require payment of just costs and any actual expenses, including attorney fees, incurred as a result

17 of the removal."). "[T]he standard for awarding fees should turn on the reasonableness of the

18 removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only

19 where the removing party lacked an objectively reasonable basis for seeking removal.

20 Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v.*

21 *Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Given this standard, the Court denies the

22 request for fees. Although the Court has ruled against UPS on the merits, it was not unreasonable

23 for UPS to argue that the amount in controversy could be met.

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

## II. CONCLUSION

For the foregoing reasons, the Court grants the motion to remand. The case is remanded back to the Contra Costa Superior Court. Mr. Benter's request for fees is denied.

The Court orders the Clerk of the Court to effectuate the remand and to close the file in the case.

This order disposes of Docket No. 13.

**IT IS SO ORDERED**.

Dated: May 9, 2024

_____
EDWARD M. CHEN
United States District Judge